IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LYNN M. CARY-LAGASSEY**,

        Plaintiff

        v.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

        Defendant.

Civil No. 3:11-cv-00395-ST

**FINDINGS AND RECOMMENDATION**

STEWART, Magistrate Judge:

    Plaintiff, Lynn Cary-Lagassey ("Cary-Lagassey"), seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 USC §§ 401-33, and Supplemental Security

1 -  FINDINGS AND RECOMMENDATION

Income ("SSI") payments under Title XVI of the Act. 42 USC §§ 1381-83f. This court has jurisdiction under 42 USC § 405(g) (incorporated by 42 USC § 1382(c)(3)). For the following reasons, the Commissioner's decision should be reversed, and this case should be remanded to the Commissioner for further proceedings.

## PROCEDURAL BACKGROUND

Born in 1958, Ms. Cary-Lagassey alleges disability since October 25, 2006, due to joint pain, memory problems, and vision difficulties stemming from breast cancer radiation and chemotherapy. Tr. 18, 189. She has a high school education with one year of junior college and past relevant work in broadcast media production. Tr. 190, 196.

The Commissioner denied Ms. Cary-Lagassey's disability applications initially and upon reconsideration. Tr. 78-81. An Administrative Law Judge ("ALJ") held hearings on June 29, 2009 (Tr. 42-77) and September 9, 2009. Tr. 22-77. On September 22, 2009, the ALJ found Ms. Cary-Lagassey not disabled. Tr. 11-20. The Appeals Council denied review of that decision on February 24, 2011. Tr. 1-3. The Appeals Council's decision is a final decision of the Commissioner, subject to review by this court. 20 CFR §§ 410.670a, 422.210.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 CFR §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 US 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

2 - FINDINGS AND RECOMMENDATION

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. Absent such a severe impairment, the claimant is not disabled. 20 CFR §§ 404.1509; 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses the RFC to determine if the claimant can perform his or her past relevant work. If so, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his or her past relevant work, then the ALJ proceeds to step five.

At step five, the ALJ must determine if the claimant is capable of performing work existing in the national economy. If not, then the claimant is disabled. 20 CFR §§ 404.1520(a)(4)(v), 404.1520(a)(4)(v), 416.920(a)(4)(v),416.920(f); *Yuckert*, 482 US at 142; *Tackett*, 180 F3d at 1099.

///

3 - FINDINGS AND RECOMMENDATION

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 US at 146 n5; *Tackett*, 180 F3d at 1098. If the sequential disability analysis reaches step five, then the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F3d at 1100. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1520(g), 416.920(g); *Tackett*, 180 F3d at 1099.

## THE ALJ'S FINDINGS

At step two, the ALJ found that Ms. Cary-Lagassey had the severe impairments of "status post lumpectomy with radiation" and depressive disorder. Tr. 13. At step three, he found that these impairments did not meet or equal a listed disorder and that Ms. Cary-Lagassey retains the RFC to perform light work, but is limited to unskilled work with only occasional public contact. Tr. 13-14. At steps four and five, the ALJ found that she could not perform her past relevant work, but could perform work in the national economy. Tr. 18. Accordingly, the ALJ found Ms. Cary-Lagassey not disabled. Tr. 19.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F3d 1219, 1222 (9th Cir 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray*, 554 F3d at 1222, quoting *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id,* citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Burch v. Barnhart*, 400 F3d 676, 679 (9th Cir 2005). This court, however, may not affirm the ALJ's findings based upon reasoning the ALJ did not express. *Bray*, 554 F3d at 1225-26, citing *SEC v. Chenery Corp.*, 332 US 194, 196 (1947).

## FINDINGS

Ms. Cary-Lagassey challenges the ALJ's evaluation of: (1) her credibility; (2) the lay witness testimony; (3) the opinions of two mental health counselors; (4) her RFC; and (5) her ability to perform work in the national economy.

**I.**     **Ms. Cary-Lagassey's Credibility**

Ms. Cary-Lagassey first challenges the ALJ's conclusion that "the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent" with the RFC. Tr. 15.

**A.**     **Legal Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 CFR §§ 404.1529(a), 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected

to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F3d at 1036, citing *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), *citing Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F3d at 883.

B.   **Testimony**

Ms. Cary-Lagassey testified that she has extreme right arm and elbow pain following her 2005 right breast lumpectomy which causes her to drop things and experience difficulty getting dressed. Tr. 48-49. Since her chemotherapy treatment, Ms. Cary-Lagassey has suffered intermittent difficulty seeing and dizziness at least once a day. Tr. 50. She has stress urinary incontinence causing her to soil and unexpectedly need to change clothes once a month. Tr. 52-53. Three weeks prior to the hearing, she experienced a panic attack, resulting in a visit to the Emergency Room. Tr. 61.

Since her 2005 cancer treatment, Ms. Cary-Lagassey has been fatigued and depressed. Tr. 55-56. She is exhausted after an hour of standing or walking. Tr. 54. She has trouble climbing stairs. Tr. 62. She cannot lift more than ten pounds, can sit for approximately a half hour, but must change positions "twenty times" in that period. Tr. 63-64. She also had difficulty reaching on her right side and estimates that she performs at 50% of her former pace. Tr. 65.

### C.     Analysis

The ALJ found that Ms. Cary-Lagassey's "allegations of debilitating pain are not fully supported by the treatment record," citing various chart notes of her reports of pain pertaining to specific symptoms. Tr. 15. The ALJ also cited the opinion of treating oncologist Regan Look, M.D., dated April 12, 2007, that Ms. Cary-Lagassey was not able to work from July 2005 through April 2006, but could perform light work after that time period. Tr. 16, citing Ex. 18F/3-9 (Tr. 706-12). Finally, the ALJ found Ms. Cary-Lagassey's allegations of "debilitating memory problems and panic attacks are not fully supported by the medical evidence." *Id.*

The record supports the ALJ as to Dr. Look's opinion and the lack of medical evidence regarding panic attacks. However, Dr. Look had not seen Ms. Cary-Lagassey since November 2006, and after issuing his opinion on April 12, 2007, he noted that, due to her medications, she had arthralgias and myalgias in her upper extremities (Tr. 789-91 (5/1/2007)), discomfort in her lower extremities (Tr. 778-80 (12/7/2007)), arm weakness (Tr. 772-74 (10/6/2008)) and joint achiness (Tr. 769-71 (4/19/2009). He also ordered a bone scan in June 2008 due to her pain. Tr. 775-77, 822-25. The ALJ failed to address these later chart notes by Dr. Look. In addition, he failed to address Ms. Cary-Lagassey's report that she visited an Emergency Room one week prior to her June 29, 2009, hearing when she was first diagnosed with a panic attack. Tr. 61.

7 - FINDINGS AND RECOMMENDATION

More importantly, the ALJ failed to consider or discuss the variety of factors that bear on credibility, instead focusing on the medical record alone. Specifically, the ALJ may not "deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell*, 947 F2d at 347 (*en banc*). However, this is what the ALJ did. Furthermore, the ALJ rejected only Ms. Cary-Lagassey's allegations of "debilitating" pain symptoms and "debilitating mental problems and panic attacks." Tr. 16. He did not consider all of her alleged symptoms in combination. 20 CFR §§ 404.1523, 416.923.

Ms. Cary-Lagassey also asserts that the ALJ mischaracterized her daily activities. Specifically, she states that the ALJ ignored her testimony that her ex-husband cares for her disabled son "55% of the time" (Tr. 57-58) and that her roommate helps her by doing more than 90% of the household work. Tr. 62. The ALJ found that Ms. Cary-Lagassey "provides almost half of the care for her disabled child" (Tr. 17) which is consistent with Ms. Cary-Lagassey's testimony that her ex-husband cared for her son more than half the time. However, the ALJ failed to address the considerable assistance provided by Ms. Cary-Lagassey's roommate and offered no discussion of her activities of daily living in his credibility analysis. Tr. 14-18. The ALJ discussed her ability to perform some household chores and manage money in his assessment of her alleged mental impairments at step two (Tr. 14), but did not cite them in his credibility analysis at step three. This court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F3d at 1225-26.

///

///

8 - FINDINGS AND RECOMMENDATION

By relying solely on the medical record, not considering all of the alleged symptoms in combination, and not addressing other factors bearing on credibility, the ALJ erred by finding Ms. Cary-Legassey not credible. *Robbins*, 466 F3d at 833.

## II.    Lay Witness Testimony

Ms. Cary-Lagassey challenges the ALJ's findings regarding the testimony by her friend, George Shinbo, and roommate, Thomas Blackloge.[1]

### A.    Legal Standards

The ALJ has a duty to consider lay witness testimony. 20 CFR §§ 404.1513(d), 416.913(d); *Molina v. Astrue*, 674 F3d 1104, 1115 (9th Cir 2012), citing *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996) and *Dodrill v. Shalala*, 12 F3d 915, 919 (9th Cir 1993). The ALJ must provide germane reasons for rejecting lay testimony. *Molina*, 674 F3d at 1114, citing *Dodrill*, 12 F3d at 919. However, the ALJ is not required to address each witness "on an individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant properly found not credible. *Id*, citing *Valentine v. Astrue*, 574 F3d 685, 694 (9th Cir 2009).

### B.    Analysis

#### 1.    George Shinbo

Mr. Shinbo testified at the hearing that he has known Ms. Cary-Lagassey 40 years and sees her several times per week. Tr. 71. She cries frequently, often for an hour or two. Tr. 72. She has also been irritable and frustrated since her 2005 surgery. *Id.* She also is easily worn out, and he

---

[1] The ALJ discussed a statement submitted by "Thomas Blackloge." Tr. 17. In their briefing, Ms. Cary-Lagassey refers to a roommate named "Thomas Bainbridge" and "Thomas Blackledge," and the Commissioner refers to "Thomas Blacklidge." The court presumes that Ms. Cary-Lagassey's roommate is the person who submitted a lay witness statement to the record. Tr. 727-34. Because that signature is not entirely legible, this court will use the same spelling as the ALJ.

estimates that her pace is 15-20% of a normal woman's pace. Tr. 73. Mr. Shinbo provided similar information in a November 30, 2006 questionnaire. Tr. 199-206.

The ALJ correctly summarized Mr. Shinbo's testimony that Ms. Cary-Lagassey cries frequently, is easily fatigued and irritable, and has a poor memory, a slow pace, difficulty following instructions and getting along with others, and difficulty using her hands. Tr. 17. However, he found these statements "not fully credible in light of the claimant's daily activities and the treatment record," specifically citing Ms. Cary-Lagassey's ability to "provide[] almost half of the care for her disabled child." *Id.*

As discussed above, the ALJ accurately cited Ms. Cary-Lagassey's childcare activity, but did not further discuss her daily activities. Just as this error infected the credibility analysis of Ms. Cary-Lagassy, it fails to provide a germane reason to reject Mr. Shinbo's testimony.

### 2. Thomas Blackloge

Mr. Blackloge completed a questionnaire on June 24, 2009, addressing Ms. Cary-Lagassey's functioning. Tr. 727-34. He endorsed "marked" limitations in her activities of daily living, social functioning, concentration, persistence, and pace. Tr. 728-30. He endorsed "extreme" episodes of decompensation (Tr. 730) and stated that she must change position every two hours (Tr. 732), has disrupted motor movement, and exhibits abnormal behavior patterns such as emotional instability. Tr. 733.

The ALJ noted that Mr. Blackloge reported performing household chores for Ms. Cary-Lagassey, such as cooking and shopping, and that he observed her difficulty with sleeping, memory and concentration problems, and pain and nausea from medication. Tr. 17. However, the ALJ rejected this testimony because: (1) Dr. Look found Ms. Cary-Lagassey capable of light work; (2) no

medical evidence suggested that her current medications caused nausea; and (3) psychological testing showed "some memory weakness and difficulties with higher level attention," but no difficulty with unskilled tasks. Tr. 18.

Lay witness testimony may not establish an affliction not reflected in the medical record. *Lewis v. Apfel*, 236 F3d 503, 512 (9th Cir 2007). However, it may valuable provide insight into a claimant's condition that not reflected by physician opinions. *Dodrill*, 12 F3d at 918-19. Here the ALJ appears to require that a physician's opinion affirm Mr. Blackloge's observations. Such reasoning is clearly unnecessary and contravenes the convention that the ALJ may not require the medical record to directly reflect the degree of a claimant's alleged pain. *Bunnell*, 947 F2d at 345-46.

Regarding nausea, the medical record repeatedly confirms that Ms. Cary-Lagassey experienced nausea throughout the period under review. Tr. 507, 517-19, 875, 896. Thus, the ALJ erred by rejecting Mr. Blackloge's observation on that point.

Regarding psychological testing, a January 2007 psychological evaluation showed "weakness on memory functions," "problems with higher level attentional functioning," slower processing of large quantities of information, with an overall score within the "normal" range. Tr. 659. In October 2006, Dr. Look additionally noted that Ms. Cary-Lagassey experienced "difficulty with her memory as well as concentrating." Tr. 872. This evidence is consistent with Mr. Blackloge's observations. Tr. 729.

In sum, the ALJ failed to provide germane reasons to reject Mr. Blackloge's testimony.

### III.   Medical Source Opinions

Ms. Cary-Lagassey challenges the ALJ's findings regarding two mental health counselors, Krista Thorne Yolam, M.A., and Lusijah Marx, Psy.D.

11 - FINDINGS AND RECOMMENDATION

A.  **Legal Standards**

Disability opinions are reserved for the Commissioner. 20 CFR §§ 404.1527(e)(1), 416.927(e)(1). When making a determination, the ALJ generally must accord greater weight to the opinion of a treating physician than to an examining physician, and greater weight to the opinion of an examining physician than to a reviewing physician. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion. *Id*. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

B.  **Analysis**

Ms. Yolam and Dr. Marx submitted a jointly signed questionnaire dated April 12, 2007. Tr. 696-704. This questionnaire states that Ms. Cary-Lagassey received weekly therapy between October 29, 2006, and January 4, 2007. Tr. 696. However, the record contains no associated treatment notes.

The responses on the questionnaire endorse that Ms. Cary-Lagassey experiences appetite disturbance, decreased energy, impairment in impulse control, psychomotor agitation or retardation, memory impairment (characterized as "short, intermediate or long term"), "apprehensive expectation," "intense and unstable interpersonal relationships," hyperactivity, motor tension, "vigilance and scanning," pressured speech, easy distractibility, recurrent recollection of trauma, and sleep disturbance. Tr. 697. They note that Ms. Cary-Lagassey's counseling treatment focused upon practical issues, skills addressing housing and finances, and marital discord. Tr. 698. Regarding the side effects of medications, they commented that "[m]any cancer patients suffer from chemotherapy

side effects such as: fatigue, memory loss, language loss, [and] concentration" and that Ms. Cary-Lagassey experiences many of these symptoms.  Tr. 699.  With respect to working at a reduced work pace, they opined that she "should not be working 8 hours a day [as] this will increase stress and limit treatment and healing."  *Id.*

Ms. Yolam and Dr. Marx endorsed "mild" limitations in Ms. Cary-Lagassey's ability to remember work procedures, understand, remember and carry out short, simple instructions, sustain an ordinary routine without supervision, make simple work-related decisions, and respond appropriately to changes in a work setting.  Tr. 701.  They indicated "moderate" limitations in her ability to maintain punctual attendance, perform at a consistent pace, accept instructions and appropriately interact with others in the workplace, and be aware of workplace hazards.  *Id.*  They endorsed "moderately severe" limitations in Ms. Cary-Lagassey's ability to maintain attention in two-hour segments, work in coordination with others without being unduly distracted, complete a normal workday or workweek without interruptions from psychological symptoms, and "deal with normal work stress."  *Id.*  They also endorsed "moderate" limitations in various functional domains such as activities of daily living, social functioning, and concentration.  Tr. 702.

The ALJ gave the opinion of Ms. Yolam and Dr. Marx "little weight" for several reasons.  Tr. 17.  First, he noted that Ms. Yolam saw Ms. Cary-Legassy "for only a brief period" and "there is no evidence that she was ever seen by Dr. Marx."  *Id*.  That conclusion is supported by the record.  A period of two months is brief, and the record does not show that Dr. Marx treated or evaluated Ms. Cary-Lagassey.  The single treatment note is dated October 29, 2006 (the first day of treatment), handwritten by Ms. Yolam, and does not indicate that Dr. Marx saw Ms. Cary-Legassey.  Tr. 622-23.

Dr. Marx may well have overseen the treatment by Ms. Yolam, but the record nonetheless supports the ALJ's finding that Dr. Marx played a limited role.

As additional reasons, the ALJ found "no evidence of ongoing functional limitations to the degree"as described by Ms. Yolam and noted that Ms. Yolam assessed physical limitations outside her expertise as a mental health counselor. Tr. 17. Ms. Cary-Lagassey challenges these reasons based on the weekly treatment over two months. However, as noted, the record contains only one treatment record authored by Ms. Yolam which merely reiterates Ms. Cary-Lagassey's report of martial discord surrounding divorce proceedings and notes that she was oriented to person, time, and place. Tr. 622-23. Although Ms. Yolam states that she saw Ms. Cary-Lagassey every week for two months, the record contains no clinical notes showing Ms. Cary-Lagassey's statements to either Ms. Yolam or Dr. Marx or documenting their own independent observations.

Finally, the ALJ found that the opinion of Ms. Yolam and Dr. Marx "is inconsistent with the claimant's daily activities, which include providing almost half of the care for her disabled child." Tr. 17. It is debatable whether this is a legitimate reason, given that the ALJ did not fully analyze Ms. Cary-Legassy's daily activities. However, the other reasons given by the ALJ are sufficient to accord little weight to the April 12, 2007, report signed by Ms. Yolam and Dr. Marx.

### IV.    RFC and Step Five Findings

Ms. Cary-Lagassey argues that the ALJ's RFC assessment is flawed because it did not include her mental limitations or upper and lower extremity pain. She also argues that the ALJ erred at step five by finding that she could perform work in the national economy. As discussed above, the ALJ erred in his credibility analysis of Ms. Cary-Lagassey and her two lay witnesses. Since the rest of the

ALJ's analysis incorporates those errors, it, too, is flawed. As a result, this court need not specifically address the additional alleged errors.

## V.     Remand

When the Commissioner's decision contains error, whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000), *cert denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F3d 1135, 1138-39 (9th Cir 2011), quoting *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

At issue is whether the testimony by Ms. Cary-Lagassey and the two lay witnesses, if credited, creates additional workplace limitations which would preclude work in the national economy. Ms. Cary-Lagassey's counsel asked the vocational expert ("VE") a lengthy question assuming a 50% work pace, stamina and fatigue at level of 8 (on a scale of 1 to 10), a long list of markedly and extremely limited mental and social impairments, daily crying spells, dizziness, and anger difficulties. Tr. 37-38. In response, the VE responded that "I would need to say that that [sic] would not be competitive." Tr. 38.

To order an immediate payment of benefits, this court must conclude that the improperly omitted evidence correlates with a finding of disability. *Strauss*, 635 F3d at 1138. Ms. Cary-Lagassey's counsel asked the VE to include every limitation imaginable under the Commissioner's regulations, but without including the specific limitations experienced by Ms. Cary-Lagassey, such as upper extremity pain. This court's task is to consider whether the limitations allegedly omitted by the ALJ correlate with a finding of disability based upon the record. The difficulty is that the record contains no such direct correlations, either in the examination of the VE or in the arguments submitted to this court. This court need not address arguments presented without specificity. *See Lewis*, 236 F3d at 514 (rejecting claimant's challenge to the ALJ's findings where claimant "offered no theory, plausible or otherwise" and pointed to no evidence of record supporting his claim).

In April 2007, Ms. Cary-Lagassey's treating physician (Dr. Look) opined she could perform light work, and no other properly supported medical opinions suggest further limitations. Thus, this court reluctantly concludes it is not "clear from the record that the ALJ would be required to find the claimant disabled" if the evidence was credited under the reasoning of *Strauss* and its precedents. This case should therefore be remanded for further proceedings in order for the ALJ to properly

consider Ms. Cary-Lagassey's testimony and the testimony of Mr. Shinbo and Mr. Blackloge. If necessary, the ALJ must then revise his RFC analysis and obtain additional testimony from the VE directly addressing Ms. Cary-Lagassey's limitations. The ALJ must then make proper findings at steps four and five of the sequential proceedings.

## RECOMMENDATION

For these reasons, the Commissioner's final decision should be REVERSED and REMANDED pursuant to sentence four of 42 USC § 405(g) for further proceedings.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 6, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 20th day of July, 2012.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge
